The judge, to whom the case was submitted on the pleadings and an agreed statement of facts, properly construed the will and directed the executor as to the administration of the estate in the particulars shown in the written judgment set forth in the statement of facts preceding the opinion, infra.
 No. 15941. OCTOBER 14, 1947.
Fred Young, as executor under the will of Mrs. Ella E. Young, deceased, filed in the Superior Court of Bleckley County, Georgia, a petition seeking construction of certain items of the will of Mrs. Young and direction as to administration, naming as defendants the legatees and devises in the said will, the sole heirs at law of Mrs. Young. The petition alleged the following: Mrs. Ella E. Young died testate on August 19, 1946, a resident of Bleckley County, Georgia, a copy of her will being attached to the petition as Exhibit "A" and made a part thereof. The said will reads as follows, omitting directions as to burial and payment of just debts: "3. I give, bequeath, and devise to my beloved daughter Mrs. Helen Mullis 25 acres of land in the northern portion of lot of land number 79 in the 21st district of Bleckley County, Georgia, which said 25 acres include the home on and in which I now live and the barn thereto, said 25 acres [then follows description]. 4. I give, bequeath and devise the balance of my land which includes 177 1/2 acres, more or less, in lot 79 in the 21st district of Bleckley County, Georgia, and 199 1/2 acres, more or less, in lot of land number 72 in the 21st district of Bleckley County, Georgia, to the following beloved daughters of mine, share and share *Page 695 
alike: Mrs. Julia Lyles, Mrs. Maggie Purser, Mrs. Pansy Hall, and Mrs. Nora Bagley. 5. I give, bequeath, and devise to my beloved sons, namely Wilbur Young, Fred Young, Vance Young, and Linder Young, four United States Liberty bonds in denominations of $1000 each, share and share alike, and they are to have all interest and increase of same. 6. I desire that one Liberty bond, being a United States Liberty bond, be sold and my beloved son John Young be given the sum of $1000 out of this bond, and the balance be divided equally between my beloved sons, Wilbur Young, Fred Young, Vance Young, and Linder Young, this bond being a denomination of $1000, the four last named to receive the balance of same which is to include all interest and increase in same. 7. I give, bequeath, and devise to my beloved daughter, Mrs. Cora Hobbs, one United States Liberty bond denomination of $1000, she to have all interest and increase in same. 8. The six United States Liberty bonds included in items 5, 6 and 7 of this will being all the United States Liberty bonds that I own or possess at this time, and the serial numbers or other description of same unknown to me at the time of making of this will. 9. I give, bequeath, and devise to my beloved son, Linder Young, the double-barrel shotgun formerly belonging to his father, T. J. Young. 10. I give, bequeath, and devise to my beloved daughter, Mrs. Maggie Purser, my cedar chest. 11. I give, bequeath, and devise to my beloved daughters, namely Mrs. Cora Hobbs, Mrs. Helen Mullis, Mrs. Nora Bagley, Mrs. Julia Lyles, Mrs. Maggie Purser, Mrs. Pansy Hall, share and share alike, the balance of my furniture and household goods and kitchen furniture. 12. I give, bequeath, and devise to my beloved daughters, namely Mrs. Helen Mullis, Mrs. Cora Hobbs, Mrs. Nora Bagley, Mrs. Julia Lyles, Mrs. Maggie Purser, and Mrs. Pansy Hall, share and share alike, the $4000 that I have as life insurance with the AEtna Life Insurance Company. 13. I desire that all other property not included in this will be put up and sold by my executor hereinafter named at my home place publicly, but without any order of court and the proceeds therefrom be divided among my children as follows: Mrs. Nora Bagley, Mrs. Julia Lyles, Mrs. Maggie Purser, Mrs. Pansy Hall, Mrs. Helen Mullis, Wilbur Young, Fred Young, Vance Young, and Linder Young. 14. In the event of the death of any of the above legatees before I die, then I desire *Page 696 
that their children to take the share of its parent, per stirpes. 15. I hereby name, constitute, and appoint my beloved son, Fred Young, as executor of this my last will and testament, and I expressly confer upon him the power as such executor to carry out all the provisions of this will, excusing him from giving any bond or making any returns to the court of ordinary, and confer upon him full power to sell the property not included in this will, as above provided, with the power to transfer any and all property herein bequeathed to the legatees herein named, without any order of court, and his legacies herein are to be in lieu of any commissions for his acting as executor herein. This 20 days of October, 1944."
It was further alleged as follows: The said will was probated in solemn form at the September term, 1946, of the court of ordinary of the said county, and the petitioner was duly named as executor therein and he qualified on such date. The following assets have come into the petitioner's hands as executor as to which he desires direction as to administering the same: (a) $3461.57 demand deposit in Cook Banking Company, Cochran, Georgia. (b) $991.78 time deposit in City Bank Trust Company, Macon, Georgia. (c) Certificate of participation, number 474, policy number NN89118 (issued or assumed by National Life Insurance Company of the United States of America) on the life of Tobe J. Young, a deduction of $396.27 for policy lien accrued interest having been made in settlement of a death claim under the above policy, the certificate of participation issued to Ella E. Young, widow and beneficiary of Tobe J. Young, deceased. (d) Some small open accounts due Mrs. Ella E. Young at the time of her death. (e) One United States of a America savings bond $1000, No. M131313B, series B, due July 1, 1946, issued to Mrs. Ella E. Young, Route 4, Cochran, Georgia, dated July 1, 1936, issue price $750, registered in name of Mrs. Ella E. Young. (f) One United States of America savings bond $1000, No. M131314B, series B, due July 1, 1946, issued to Mrs. Ella E. Young, Route 4, Cochran, Georgia, dated July 1, 1936, issue price $750, registered in name of Mrs. Ella E. Young. (g) One United States of America savings bond $1000, No. M131315B, series B, due July 1, 1946, issued to Mrs. Ella E. Young, Route 4, Cochran, Georgia, dated July 1, 1936, issue price $750, registered *Page 697 
in name of Mrs. Ella E. Young. (h) Rents derived from real estate in said will. At the time of the making of the said will, Mrs. Ella E. Young was possessed of six United States savings bonds, series B, for $1000, of the character set out above. In October, 1945, Mrs. Ella E. Young cashed three United States savings bonds, series B, of the character set out above. The petitioner does not have any knowledge or information that the deceased delivered the money from the bonds so cashed to any of the legatees named in items 5, 6, and 7 of the will, and neither can the money from the said cashed bonds be traced. The petitioner did not find and does not have any knowledge or information that Mrs. Ella E. Young ever owned any United States Liberty bonds. The petition then named the above-mentioned legatees and devisees as being all the heirs at law of the testatrix and named them as defendants, and prayed for a construction of the will and direction as to administration, setting forth certain questions in the premises which need not be enumerated here, as they are fully covered in the judgment of the court hereinafter quoted. The defendants, Vance Young, John Young, Linder Young, and Mrs. Cora Young Hobbs, joined in a plea and answer, setting forth their contentions as to the proper construction of the items of the will upon which the executor desired to be instructed. The defendants, Wilbur Young, Mrs. Helen Mullis, Mrs. Julia Lyles, Mrs. Maggie Purser, Mrs. Pansy Hall, and Mrs. Nora Bagley, also joined in a plea and answer, setting forth their contentions as to the proper construction of the items of the will.
By agreement of all parties, the case was submitted to the judge of the court for decision, without the aid of a jury, upon the pleadings and the following stipulation of facts: Mrs. Ella E. Young died in Bleckley County on August 19, 1946, testate, having made her will on October 20, 1944. The will, a copy of which was attached to the petition, was probated in solemn form in the Court of Ordinary of Bleckley County at its September, 1946, term. Fred Young, who was named as executor in the will, duly qualified as such executor. Mrs. Young left surviving her the children who were named as legatees and devisees in the will, they being her sole heirs at law. Prior to her death Mrs. Young had rented for farm purposes for the year 1946 the lands devised in her will, the rental of $775 having been paid to the executor after her *Page 698 
death. At the time of the execution of the will and at the time of her death, Mrs. Young owned and possessed three United States of America savings bonds of series B, in the denomination of $1000 each, the same having been issued as of July 1, 1936, with the maturity date July 1, 1946, and being numbered respectively M131313B, M131314B, and M131315B. The purchase-price of the bonds was $750 each, their maturity value being $1000 each. At the time of the execution of the will she owned and possessed, in addition to the foregoing described bonds, three United States of America savings bonds of series B in the denomination of $1000 each, the same being dated July 1, 1936, and maturing July 1, 1946, the purchase-price being $750 each and the maturity value $1000 each. These last three named bonds Mrs. Young surrendered, and they were redeemed, in October, 1945, after the execution of her will, and she did not own or possess the same at the time of her death or deposit their proceeds in her bank account. At the time of making her will the said testatrix did not own or possess any United States Liberty bonds or any United States bonds other than those above described, and this was also true at the time of her death. The above-described bonds, M131313B, M131314B, and M131315B, owned by the testatrix at the time of the execution of her will, were the bonds referred to in items 5, 6, 7, and 8 of the will. Under item 12, the beneficiaries of the bequest of "the $4000 that I have as life insurance with the AEtna Life Insurance Company" have received $114.61 each or a total of $687.65, the value of the insurance at the time of the death of the testatrix. At the time of the execution of the will, and at the time of her death, Mrs. Young owned and possessed an automobile, a few head of cattle, and farm implements located on her home place, which said property was sold by the executor, as provided for in item 13 of the will, for $2472.60. The testatrix died seized and possessed of certain other property not specifically mentioned in her will, namely: some small accounts due her at the time of her death; one Certificate of Participation, number 474, policy No. NN89118 (issued or assumed by National Life Insurance Company of the United States of America) on the life of Tobe J. Young, issued to the said testatrix as beneficiary of the said Tobe J. Young, deceased, in settlement of the claim under the said policy; $3461.57 on demand deposit in Cook Banking *Page 699 
Company, Cochran, Georgia; $991.78 on time deposit in City Bank 
Trust Company, Macon, Georgia. It was also stipulated as follows: The said executor has assented to the legacies in items 3, 4, 9, 10, 11, and 12 of the said will. The debts of the estate have been paid, except one contested demand for approximately $575. Funeral expenses of administration of the estate, amounting to $1222.96, have been paid. Unpaid items are as follows: expenses of administration for marker for the grave of the said testatrix; expenses of the executor and attorney's fees, the amount of which has not been determined. The executor now has on hand:
 The foregoing described three United States of America savings bonds of series B, Nos. M131313B, M131314B, and M131315B, of the value of $1000 each ........................... $3000.00 Deposit in Cook Banking Company ................... 3461.57 Deposit in City Bank Trust Company .............. 991.78 Proceeds from sale of property on home place....... 2472.60 Rents collected from land ......................... 775.00 Cash collected from open accounts, approximately... 100.00 ----------- Total ..............................................$10,800.95
 Less amount paid on expense of administration....... 1,222.96 Leaving on hand, approximately .....................$ 9,577.99
The court rendered judgment as follows: "Upon consideration of this case it appears the said executrix, Mrs. Ella E. Young, intended to remember all of her children in the distribution of her estate; that she possessed at the time of her death all of the property undertaken to be disposed of by her will save 6 United States Liberty bonds mentioned in items 5, 6, 7, and 8 of the will, which bonds she did not have either at the time of the execution of the will or at her death, but did have at the time of the execution of the will 6 United States of America savings bonds in denomination of $1000 each, and that she had disposed of 3 of same. Also that she had at time of her death on deposit in banks $4453.35, which she did not have in mind in making the will. The will did not mention any money. The answer to questions *Page 700 
raised is not without doubt. It is difficult to know the law applicable to and controlling same. But it is clear the testatrix intended to remember all of her children substantially alike, and having done this it was her further intention to give the residue of her estate to all of her children excepting two. To carry out this scheme she made certain special bequests in items 3, 4, and 12 of the will, and intended to give the legatees named in items 5, 6, 7, and 8 not less than $1000 each, and then provided in item 13 for the disposition of the residue of her estate. Now I am not in doubt as to her intention and as to what is a fair and just construction of the will. Hence I find:
"1. That the $775 rents received from the lands mentioned in items 3 and 4 of the will go with the lands to the legatees named in said items.
"2. That the 3 United States of America savings bonds be collected and reduced to cash by the executor.
"3. That the legatees named in items 5, 6, 7, and 8 of the will receive $1000 each. Same to be paid, together with the debts, if any, of the estate and the expenses of administration, from the proceeds of the said three United States savings bonds, from the deposits in the banks, from the proceeds of the open accounts, the certificate of participation number 474, and from the proceeds $2472.60 from sale of the property on the home place.
"4. That the legatees named in item 13 of the will receive the residue of the estate, that is, the balance in hand after payment of the legacies in items 5, 6, 7, and 8, if any, and the expenses of administration.
"5. The executor is not entitled to any commissions, but is entitled to his expense in the administration of the estate.
"Wherefore, it is ordered and adjudged that the said will be construed as hereinbefore set out, and that the executor be instructed to administer and distribute said estate in accordance with the findings made herein in paragraphs 1, 2, 3, 4, and 5 of this judgment. Let the costs of this case be paid by the executor from the funds of said estate as part of the expense of administration of the estate. This May 29, 1947."
To the judgment of the court Wilbur Young, Mrs. Helen Mullis, Mrs. Julia Lyles, Mrs. Maggie Purser, Mrs. Pansy Hall, and *Page 701 
Mrs. Cora Hobbs excepted, and it is contended that it should have been held by the court:
1. The legacies in items 5 and 7, relating to bonds, are specific and not general, and the legatees should receive only such specific property of that bequeathed as was owned by the testatrix at her death, the abatement being pro rata.
2. The legacy in item 6, $1000 from the proceeds of the sale of a bond to be paid to John Young, is adeemed.
3. The sum of money in banks, $4453.35, not specifically mentioned in the will, should be disposed of under item 13, along with "all other property not included in this will," and not be divided among all the heirs.
"Legacies may be either general or specific. A specific legacy is one which operates on property particularly designated. A gift of money to be paid from a specified fund is nevertheless a general legacy." Code, § 113-808. However, a testator may so charge a money legacy upon a particular fund as to make the legacy follow the fate of the fund. Tinsley v. Maddox,176 Ga. 471 (13) (168 S.E. 297). A good definition of a specific legacy is found in Harper v. Bibb, 47 Ala. 547, 553: "A specific legacy is one that can be separated from the body of the estate and pointed out so as to individualize it, and enable it to be delivered to the legatee as a thing sui juris. The testator fixes upon it, as it were, a label, by which it may be identified and marked for delivery to the owner, and the title to it, as a separable thing, vests at once, on the death of the testator, in the legatee." In Jarmon on Wills (6th ed.), appears the following statement, quoted with approval in Bailes v.Halsey, 179 Ga. 182, 184 (175 S.E. 472): "A general legacy is a gift of something to be furnished out of the testator's general personal estate; it need not form part of the testator's property at the time of his death." A residuary legacy is "a general legacy into which fall all the assets of the estate after the satisfaction of all other legacies and the payment of all debts of the estate and all costs of administration." Redfearn on Wills and Administration (rev. ed.), 234, § 144; Henderson v.First National Bank of Rome, 189 Ga. 175 (5 S.E.2d 636, 128 A. L. 816). *Page 702 
"In construing a will the intention of the testator is the controlling consideration, and his intention must be ascertained by taking the will, as it is said, `by the four corners,' and giving to all parts of it consideration." Yerbey v. Chandler,194 Ga. 263 (21 S.E.2d 636). See also Shoup v. Williams,148 Ga. 747 (98 S.E. 348); Owens v. Citizens SouthernNational Bank, 177 Ga. 289 (3) (170 S.E. 196). Another rule early announced is that, where the question is in doubt, the courts are not inclined to construe a legacy to be specific.Morton v. Murrell, 68 Ga. 141. As stated in Tifft v.
Porter, 8 N.Y. 516, and approved in Bailes v. Halsey, supra, "The presumption is stronger that a testator intends some benefit to a legatee than that he intends a benefit only upon the collateral condition that he shall remain, till death, owner of the property bequeathed."
Unquestionably the will of the testatrix evidences in its entirety an intention to remember all of her children substantially alike in the disposition of the property mentioned in the will, and as to any residue to bequeath it to all of her children with the exception of John Young and Mrs. Cora Hobbs. Omitting three bonds disposed of after the execution of the will, she possessed at her death practically all of the property she sought to dispose of by her will. The designation of her bonds as "Liberty bonds," instead of United States savings bonds as in truth they were, negatives any effort or desire to precisely label, sequester, or identify any bond so as to render it capable of being delivered to one rather than to another legatee among those to whom bonds were bequeathed. While the testatrix did not mention any money in bank or accounts receivable, yet in selling three of her bonds she was evidently aware that she had sufficient funds in her estate, or would have at her death, out of which to pay those deprived of a bond the exact equivalent. She refers in her will to the bonds as being of the denomination of $1000, and it may reasonably be inferred that she intended to bequeath to each of the legatees in items 5, 6, and 7 something which had a value of $1000, that is, she desired to confer upon each a benefit of $1000. Had the testatrix, in items 5 and 7, described or labeled the bonds, as it were, so that particular and definite bonds, as distinguished from bonds generally described and usually available in the open market, could be delivered to the legatees under item 5, and an equally *Page 703 
separable and distinct bond could be delivered under item 7 to Mrs. Cora Hobbs, were all such bonds owned by the testatrix at her death, such legacies would, under the legal definitions above quoted, have been specific legacies. To illustrate: If the testatrix had willed "a bond which I now own, being a United States savings bond numbered M131316B, the same having been issued on July 1, 1936, and maturing on July 1, 1946, the issue price being $750 and the maturity value being $1000," such a legacy would clearly have been a specific legacy. If such a bond had been sold by the testatrix after so labeling or sequestering it, the legacy would, therefore, be adeemed, which ademption, as stated in the Code, § 113-817, may occur under the following circumstances: "A legacy is adeemed or destroyed, wholly or in part, whenever the testator delivers over the property or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy given; or when the testator conveys to another the specific property bequeathed, and does not afterward become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy." The failure to particularize the bonds bequeathed in item 5 to the four named sons of the testator, and the bond bequeathed in item 7 to Mrs. Cora Hobbs, daughter of the testatrix, forbid their being classified as specific legacies, and, consequently, they do not fail but are payable as general legacies, $1000 to each legatee, out of the general assets of the estate, including the proceeds from the sale of the three bonds on hand, hereinafter referred to, after the payment of debts, if any, and the expenses of administration. These assets, being the "general assets," and to which recourse may be had for the payment of the legacies above mentioned, are: 1. The proceeds from the sale of the three bonds on hand. 2. $4453.35 in bank. 3. $100 collected from open accounts. 4. $2472.60, proceeds from the sale of certain property on the home place of the testatrix. 5. Proceeds from the certificate of participation No. 474. We do not include the $775 collected by the executor as rents which, as ruled by the trial court, properly go to those legatees to whom the lands were devised, and to which ruling no exception is taken.
In item 6 it is plain that the testatrix intended that the legatee, John Young, receive $1000, her "desire" that "one Liberty bond" *Page 704 
be sold being merely the recommendation of a source from which the $1000 might be obtained. The legacy is not a specific legacy which has been adeemed, as contended by the plaintiffs in error, as it does not bequeath a bond so labeled and sequestered as to be distinguished from another bond of a similar kind. It is a demonstrative legacy and does not fail if the subject-matter be not in existence on the death of the testatrix. "A demonstrative legacy is one which designates the fund or property from which it is to be satisfied, but is nevertheless an unconditional gift to the legatee of the amount or value specified. That it names a particular fund or other property from which it is to be satisfied, is considered to be demonstrative of a convenient mode of payment; if that mode fails, the legacy is to be satisfied out of the general assets of the estate. A demonstrative legacy differs from a general legacy in that it does not, in the first instance, abate upon the insufficiency of assets to pay the debts of the estate and the expenses of distribution; it differs from a specific legacy in that there is recourse for its payment from the general assets of the estate in the event of ademption in part or in whole." Owens v. Citizens Southern Nat. Bank,177 Ga. 289 (2) (170 S.E. 196); Thomas v. King, 182 Ga. 463
(1) (185 S.E. 820). This legacy is also payable out of the "general assets." Since the will may reasonably be construed as showing an intention of the testatrix to bequeath to the six legatees under items 5, 6, and 7 something of the value of $1000 each, and only three bonds remain, a fair and just execution of the will, as found by the trial court, would be to sell the three bonds and place the proceeds in the general assets, and from that fund pay the six legatees under items 5, 6, and 7, $1000 each.
The contention that the money in bank, $4453.35, though not specifically mentioned in the will, should be treated as part of the residue bequeathed in item 13, rather than be divided between all the heirs, is well taken, except that, along with other parts of the residue, it may be resorted to for the payment of the legacies in items 5, 6, and 7 in the manner hereinbefore pointed out. In item 13 it was willed: "I desire that all other property not included in this will be put up and sold by my executor hereinafter named at my home place publicly, but without any order of court and the proceeds therefrom be divided among my children as follows: *Page 705 
(Naming all the children except John Young and Mrs. Cora Hobbs.)" The money in bank certainly comes within the description, "all other property not included in this will; and although the testatrix directed that the property intended for the children named in item 13 be put up and sold for the purpose of division, the will can not reasonably be construed to require the doing of a useless thing, that is, the selling of that which is already payable in money in a fixed sum, but to require only the sale of "all other property not included in this will," which necessarily has to be converted into cash in order to properly disburse the residue of the estate.
Respecting the inquiry from the executor in his petition as to whether he would be entitled to any commission, an inquiry evidently made in connection with the question whether or not the money in bank, $4453.35, not mentioned in the will, would pass to all the heirs or be distributed under item 13 relating to the residue of the estate, it must be said that, since all the property comes under the provisions of the will, the executor is not entitled to any commission whatever, it being provided by item 15 that "his legacies herein are to be in lieu of any commissions for his acting as executor herein." The trial court so held.
It follows from the above that the court correctly construed the will and properly instructed the executor as to the disposition of the assets, as set out in paragraphs numbered 1 to 5, inclusive, of the judgment.
Judgment affirmed. All the Justices concur, except Wyatt, J.,who took no part in the consideration or decision of this case.